UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN CORRION,

                     Petitioner,                              Case Number 09-10696
                                                              Honorable David M. Lawson

v.

MARY BERGHUIS,

                     Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

John Corrion is a prisoner confined at the Michigan Department of Corrections's Earnest Brooks Correctional Facility serving a sentence for soliciting his cellmate to murder Corrion's ex-wife. Corrion contends that his conviction is unconstitutional, and his petition and amended petition for writ of habeas corpus, filed *pro se*, identifies nineteen separate claims for relief. The respondent filed an answer arguing only that the petition must be dismissed because the petitioner did not exhaust his state court remedies with respect to eight of his claims. She has not bothered to address the merits of the other claims, despite her obligation to do so. *See* Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts (requiring that "[t]he answer must address the allegations in the petition"). The petitioner did not fairly present several of these claims to all the Michigan appellate courts, but because there are no longer any avenues for relief in state court for Corrion, the exhaustion defense does not apply. However, the Court finds that many of Corrion's claims were denied on state procedural grounds, which constitute an adequate and independent basis under state law to refuse the claims. The balance of the claims that are properly presented lack merit. Therefore, the Court will deny the petition.

I.

The solicitation plot was hatched while Corrion was incarcerated in the Livingston County Jail serving a sentence for assaulting his ex-wife, Karen Corrion, with the intent to cause her great bodily harm. That assault took place during the evening of May 10, 2005. Karen had been divorced from the petitioner, her husband of thirty-one years, since 2001. The petitioner violently attacked Karen when she left her home to investigate a disturbance on her property. As part of the assault sentence, the petitioner was required to serve a term of incarceration in the Livingston County Jail. While the petitioner was in jail, Ms. Corrion had no contact with him.

Leonard Johnson was the person with whom the petitioner negotiated to kill Karen Corrion. Johnson was a pretrial detainee facing a charge of uttering and publishing for which he ultimately was sentenced to a term of probation. Johnson was transferred to the petitioner's cell, and although the petitioner asserts the transfer was by the state's design, there is no evidence in the record suggesting that his contention has any basis in fact.

According to Johnson's trial testimony, he and the petitioner engaged in conversation about the petitioner's troubles with his ex-wife. Johnson told the petitioner about dead bodies buried underneath a swimming pool in Florida, and the petitioner then said that he would like to see his ex-wife look like that. Johnson suggested that he and his brother-in-law could beat his ex-wife up when he got out of jail. Johnson admittedly lied about his brother-in-law having killed someone in the past. The petitioner agreed, and he offered to pay Johnson to hurt his ex-wife because he did not want her to get any more money from him. Johnson acknowledged that he initially offered to do harm to Karen Corrion, but he said that the idea of actually killing her was the petitioner's. The petitioner offered to pay Johnson for that service.

Johnson, proving to be an unreliable business partner, then attempted to turn this deal to his advantage and wrote a letter to Detective Donald Welch about this information. Even though Johnson had already plead guilty in his own case, he was hopeful that he could work out some sort of arrangement for leniency. He insisted that he made no plea agreements as a result of his cooperation in the petitioner's case, but he admitted that the prosecutor notified the court regarding his cooperation. The cooperation consisted of Johnson's agreement to wear a wire for the detective, which he did on two occassions.

During the first recorded conversation, which occurred on September 7, 2006, Johnson and the petitioner were in a general holding area. The petitioner talked about having something done to his ex-wife and was willing to pay to have it done. At the request of Detective Welch, Johnson asked the petitioner to draw a map of his ex-wife's property. Johnson identified the map drawn by the petitioner, and how the petitioner suggested that he approach the house to avoid the security cameras. After the conversation with the petitioner, Johnson gave the map to the detective.

At trial, Karen Corrion identified the hand-drawn map of her residence that the petitioner had drawn. The map showed the location of several security cameras. Ms. Corrion testified to various acts of vandalism occurring at her residence, including the repeated dumping of garbage, that she believed were performed by the petitioner.

Apparently, the quality of the first recording was very poor. Detective Welch then wired Johnson for a second conversation, which took place on September 8, 2006. During that encounter, the petitioner drew another map. The petitioner stated that he wanted his ex-wife dead, and he was willing to pay $20,000. He was able to arrange generous credit terms with Johnson, who agreed to

take a $100 down payment.  Later, Johnson became aware of the fact that the petitioner's current wife deposited $100 into Johnson's jail account.

Detective Welch described his first contact (letter) and conversation with Johnson and Johnson's agreement to cooperate.  Johnson agreed to wear a wire and was sent back into the cell with the petitioner. Welch watched the first attempt to record a conversation on a monitor.  The attempt was unsuccessful, however, because there was too much background noise.  Welch confirmed that the petitioner drew a map of his ex-wife's property during this first conversation.

The next day, when Johnson was wired again, the recorded conversation was mostly audible. This second conversation between the petitioner and Johnson was played for the jury.  There were portions of the recording that were difficult to hear, and a transcript was also prepared.  The transcript was received in evidence by stipulation.

The following week, Welch contacted Ms. Corrion, and she verified the information contained on the maps.  The petitioner later directed his current wife to place money into Johnson's jail account.  Copies of telephone conversations between the petitioner and his wife were recorded and admitted into evidence.  In these conversations, the petitioner explained to his wife that the money was a loan to Johnson for his bond.

The defense did not present any witnesses, and the petitioner did not testify, although he acknowledged on the record his right to do so.  The jury found the petitioner guilty of solicitation to commit murder in violation of Michigan Compiled Laws § 750.157b(2).  He was sentenced as a second habitual felony offender to an indeterminate sentence with a minimum prison term of 21 years, 10 months and a maximum term of 40 years.

Following his conviction and sentence, the petitioner filed a direct appeal.  His appellate counsel filed a brief that raised five claims:

I.      Ineffective assistance of counsel for failing to move for an entrapment hearing.

II.     Improper admission of Michigan Rules of Evidence 404(b) evidence at trial.

III.    Prosecutorial misconduct in prosecutor's closing argument.

IV.     Jury was improperly instructed on how to consider Rule 404(b) evidence.

V.      Trial court erred in scoring the sentencing guidelines.

The petitioner also filed a *pro se* supplemental brief, raising an additional eight claims:

I.      Defendant is entitled to a new trial where the whole transaction was not played to the jury.

II.     Defendant is entitled to a new trial when his counsel would not call favorable witnesses or let the defendant testify in his own behalf.

III.    Defendant is entitled to a new trial when he was denied his right to counsel by police in their manufactured crime.

IV.     Defendant is entitled to a new trial by the prosecution playing the third party non-consensual sound recordings to the jury.

V.      Defendant is entitled to a new trial when the trial court violated Michigan Rule of Evidence 402, 403, and 404(b).

VI.     Defendant is entitled to a new trial when his counsel denied his request for an entrapment hearing.

VII.    Defendant is entitled to a new trial as police requested defendant to make incriminating maps through their agent.

VIII.   Defendant is entitled to a new trial where instructions to the jury were inadequate to show guilt beyond a reasonable doubt.

The Michigan Court of Appeals affirmed in an unpublished opinion.  *People v. Corrion*, No. 278169, 2008 WL 4332096 (Mich. Ct. App. Sept. 23, 2008).  The petitioner then filed an application

for leave to appeal in the Michigan Supreme Court that raised the five claims presented in his appellate counsel's brief, the eight claims presented in his supplemental brief, and the following three additional claims:

    I.      The trial court unlawfully enhanced the sentence as punishment for going to trial in lieu of pleading guilty.

    II.      The sentence was enhanced with a prior conviction for which defendant did not have counsel for his first-tier appellate proceeding.

    III.      Trial court was coercive and not neutral or detached because the court threatened a 22-to-80 year sentence for going to trial.

The Michigan Supreme Court denied the petitioner's application for leave to appeal. *People v. Corrion*, 483 Mich. 882, 759 N.W.2d 389 (2009) (table).

The petitioner then filed a motion for relief from judgment in the trial court after his habeas petition had been pending in this Court. The trial court granted his request for counsel. The motion raised the following seven claims:

    I.      Withholding material evidence is a violation of the due process / equal protection clauses of the Sixth and Fourteenth Amendments to protect life, liberty, and property.

    II.      Impeachable perjured testimony was presented in violation of defendant's right to due process of law pursuant to the Fifth and Fourteenth Amendments.

    III.      The defendant was denied due process of law in plain error by prosecutorial misconduct as they withheld material exculpatory evidence.

    IV.      Defendant was represented with ineffective assistance of counsel in violation of the Sixth Amendment.

    V.      The trial court abused its discretion in failing to correct sentence under Michigan Court Rule 6.429 in plain error requiring dismissal of conviction.

    VI.      The defendant had a right to suppress the non-consensual third-party recordings in an evidentiary hearing.

VII.   The prosecutor failed to respond to defendant's pleadings under the equal protection clauses of the Michigan and Federal constitutions.

The trial court denied the motion by opinion and order dated May 18, 2010 on the grounds that the petitioner could have raised these issues in his direct appeal and he failed to demonstrate cause and prejudice for his failure to do so. The petitioner then filed an application for leave to appeal in the Michigan Court of Appeals that was denied because the petitioner failed to "meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D)." *People v. Corrion*, No. 298816 (Mich. Ct. App. Sept. 8, 2010). The Michigan Supreme Court denied the petitioner's subsequent application for leave to appeal for the same reason. *People v. Corrion*, 796 N.W.2d 53 (Mich. 2011).

The petitioner filed his habeas petition in this Court on February 25, 2009. The petition has been amended and supplemented, and if now asserts the following fourteen claims:

I.   The whole transaction was not played to the jury.

II.   Trial counsel would not call favorable witnesses or let the petitioner testify on his own behalf.

III.   The petitioner was denied his right to counsel by the police in their manufactured crime.

IV.   The prosecution played the third-party non-consensual sound recordings to the jury.

V.   The trial court violated Michigan Rules of Evidence 402, 403, and 404(b).

VI.   Trial counsel denied the petitioner's request for an entrapment hearing.

VII.   Police requested the petitioner to make incriminating statements through their agent.

VIII.   The instructions to the jury were inadequate to show guilt beyond a reasonable doubt.

IX   The petitioner's sentence was enhanced because he exercised his constitutional right to testify.

    X.      The trial court erred in enhancing the petitioner's sentence with prior conviction deemed unconstitutional in light of *Halbert v. Michigan.*

    XI.     The petitioner was harmed by a trial court that was not neutral and detached but instead coercive.

    XII.    The petitioner was denied equal protection / due process of the court rules by the higher courts requiring reversal.

    XIII.   The petitioner was denied his due process right to an evidence hearing by the trial court.

    XIV.   The petitioner was penalized for residing in Michigan when Montana's constitution prohibits warrantless recording of conversation between the petitioner and undercover police officers or a confidential informant.

The respondent answered the petition raising only procedural defenses.

## II.

The provisions of the AEDPA which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28

U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in *Harrington v. Richter*, --- U.S. ----, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with

"deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id.* at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, ---- U.S. ----, ----, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached") (internal quotation marks and citations omitted); *see also Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).  Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ----, 131 S. Ct. 1388, 1398 (2011).

A.

-10-

The petitioner asserts in his first claim that the prosecutor withheld the September 7, 2006 recording from the defense, and he now contends that withholding that evidence violated the rule in *Brady v. Maryland*, 373 U.S. 83 (1963), because the first tape would have shown that Johnson is the one who initiated the idea of murdering the petitioner's ex-wife. The petitioner raised a similar claim in his *pro se* supplemental brief filed in the Michigan Court of Appeals during his direct appeal, but his legal theory was different: he alleged that the prosecutor's introduction of the September 8, 2006 recording without the September 7, 2006 recording violated due process because the "whole transaction" was not played for the jury. The petitioner's new theory emerged in his motion for relief from judgment.

The petitioner is required to exhaust his remedies in state court by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. § 2254(b)(1)(A), (c). "Exhaustion" means that a prisoner must "'fairly present[]' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns.'" *Carter v. Bell*, 218 F.3d 581, 607 (6th Cir. 2000) (quoting *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995)). The doctrine of exhaustion requires that a claim be presented to the state courts under the same theory as the claim being raised in the habeas petition. *Williams v. Bagley*, 380 F.3d 932, 969 (6th Cir. 2004). The petitioner did not present the present claim to the state courts on direct appeal.

The state trial court denied relief because the petitioner did not follow the state procedure by raising his claim on direct appeal, and he did not show cause for his failure to do so or prejudice that would result from refusal to address the merits of the claim. That ruling echos the procedural default bar that applies in this Court.

-11-

A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Such a default may occur if the state prisoner fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., make a contemporaneous objection or file a motion for a directed verdict. *See Simpson v. Sparkman*, 94 F.3d 199, 202-03 (6th Cir. 1996). Procedural default will bar consideration of the merits of a federal claim if the state rule is actually enforced and is an adequate and independent ground for the state court's decision. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Monzo v. Edwards*, 281 F.3d 568, 575–76 (6th Cir. 2002).

In this case, both Michigan appellate courts denied relief in standard form orders on the grounds that the petitioner had failed to demonstrate entitlement to relief under Michigan Court Rule 6.508(D). The Sixth Circuit has held that the form orders used by the Michigan appellate courts are unexplained because they are ambiguous as to whether they refer to a procedural default or the denial of right on the merits. *Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010). However, when the Court "look[s] through," *id.* at 291; *see also id.* at 293 (Boggs, J., dissenting), the unexplained orders of the Michigan appellate courts to the decision of the state trial court, it is quite clear that the court applied the state's procedural bar to the petitioner's claim. The court held:

> This Court finds that Defendant has not sufficiently demonstrated "good cause" as required. As noted, the unpublished opinion touches on each of the items Defendant now seeks. Yet Defendant did not directly allege on appeal that the materials contained exculpatory evidence or were wrongfully withheld. Defendant does not offer any "good cause" for failing to raise this claim of relief on appeal. Nor has Defendant set forth any argument related to "actual prejudice" other than in his statement of jurisdiction. Thus, this Court cannot grant relief on Defendant's first issue.

-12-

Opinion and Order on Def.'s Mot. for Relief From J. at 3.  Based on the record, the petitioner's post-conviction claim is procedurally defaulted and review is barred absent a demonstration in this Court of cause and prejudice.  *See Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007); *see also Howard v. Bouchard*, 405 F.3d 459, 478 (6th Cir. 2005).

The petitioner does not acknowledge the default and therefore he does not attempt to excuse it.  But even if he did so, he would still not be entitled to relief because the claim is without merit. It is true that the Due Process Clause requires the state to disclose to the defense favorable evidence that is material to guilt or punishment. *Brady*, 373 U.S. at 87.  "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *see also Robinson v. Mills*, 592 F.3d 730, 735 (6th Cir. 2010) (holding that "[a] successful *Brady* claim requires a three-part showing: (1) that the evidence in question be favorable; (2) that the state suppressed the relevant evidence, either purposefully or inadvertently; (3) and that the state's actions resulted in prejudice." (*quoting Bell v. Bell*, 512 F.3d 223, 231 (6th Cir. 2008))). The petitioner bears the burden of establishing each of these three elements. *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000).

The petitioner's claim fails because he cannot show that the September 7, 2006 tape was suppressed.  In his *pro se* brief filed in his direct appeal, the petitioner admitted that the defense had reviewed a copy of the tape, stating "defendant asked his counsel and pleaded with him to let the jury hear the Sept. 7, 2006 sound recording, to be refused." *Pro se* Brief at 6.  Toward the end of the prosecutor's case, the trial court alluded to the tape when he informed the jury that the prosecutor

-13-

"[m]ay or may not play another tape." Trial Tr., Vol. II(A), Apr. 26, 2007, at 34. A brief conference then was held between the attorneys about whether the tape would be played. *Ibid.* The prosecutor apparently decided to not play the tape to save time, and defense counsel agreed. *Ibid.* Defense counsel acknowledged that he had reviewed tapes prior to trial. *Id.* at 3, 7. The record contradicts the petitioner's assertion that the tape was suppressed.

As for the petitioner's original theory, the Michigan Court of Appeals denied the claim on the merits, stating:

> [T]here is no factual support for defendant's argument that the recording was exculpatory. On the contrary, Detective Welch testified that the recording was inaudible because of excessive background noise. Moreover, even if the recording showed that defendant did not solicit the informant on September 7, 2006, there was evidence that defendant did so at other times. For these reasons, there is no basis for concluding that the failure to play the recording was either plain error or affected defendant's substantial rights.

*Corrion*, No. 278169, 2008 WL 4332096, *7 (Mich. Ct. App. Sept. 23, 2008). The court added that defense counsel was not ineffective for electing not to play that tape, either:

> Defense counsel apparently had a copy of the first recording and chose not to play it for the jury. In light of the detective's testimony that the conversation on the recording was not audible, defendant has not shown that defense counsel was ineffective for failing to offer it.

*Id.* at *8.

The state court's reasoning faithfully tracks federal law. This Court agrees with the conclusions and finds no basis for habeas relief on the constitutional aspects of the petitioner's first claim.

The petitioner also contends that failing to introduce the first tape violates state evidence rule 106, which requires, on request, that an entire recording be played for the jury when an opponent introduces only excerpts. *See* Mich. R. Evid. 106. However, it is well-settled that alleged trial court

-14-

errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant federal habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Clemmons v. Sowders,* 34 F.3d 352, 357 (6th Cir. 1994).

In this case, the admission of the September 8, 2006 recording without the previous day's recording did not violate state evidentiary law, nor did it violate due process. The court was not required to play the September 7, 2006 recording under Michigan Rule of Evidence 106 because neither the petitioner nor his counsel moved for admission of both recordings. *See United States v. Phillips*, 543 F.3d 1197, 1203 (10th Cir. 2008) (citations omitted) ("Rule 106 does not prohibit introduction of an incomplete [recording]. Instead, it allows the party against whom the document is introduced to place the remainder in evidence without additional evidentiary foundation. If [petitioner] wanted the remainder of the [recording] to be admitted, [he] should have offered it."). Moreover, there is no evidence that the recording from the first day would have added anything of substance because it was inaudible. There is no merit to the petitioner's first claim.

## B.

The petitioner's second claim is that he was denied the effective assistance of counsel when his trial attorney failed to call any witnesses and failed to have the petitioner testify in his own defense. The petitioner raised this claim in his *pro se* brief on direct appeal. The Michigan Court of Appeals rejected it on the merits. As to the petitioner not testifying, that court noted: "Initially, defendant agreed on the record that he had consulted with defense counsel and was waiving his right

-15-

to testify based on counsel's advice. Defendant also acknowledged that it was his 'choice knowingly and voluntarily to not testify in this case.'" *Corrion*, No. 278169, 2008 WL 4332096, *3 (Mich. Ct. App. Sept. 23, 2008). The court relegated the decision to call or not to call other witnesses to matters of trial strategy, and held:

> Here, the parties stipulated that two of defendant's fellow inmates would testify that they learned that the informant needed approximately $600 for restitution and $1,300 for extradition from Florida in order to bond out of jail. On appeal, defendant does not identify any other witnesses who he believes counsel should have called, nor does he explain the substance of their expected testimony. Accordingly, there is no basis for concluding that counsel's failure to call additional witnesses deprived defendant of a substantial defense. Defendant has failed to overcome the presumption of sound trial strategy.

*Ibid.*

To establish the ineffective assistance of counsel, the petitioner must show that counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins*, 539 U.S. at 521 (*quoting Strickland*, 466 U.S. at 688).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Id.* at 694.  Unless the petitioner demonstrates

both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] . . .

resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

The Michigan Court of Appeals properly applied these standards.  First, the record shows

that counsel made a strategic decision to recommend that the petitioner not testify, and the petitioner

agreed with the decision:

> Defense Counsel: John, you and I had discussed on several occasions your right to testify in this case, correct?
>
> The Petitioner: Correct.
>
> Defense Counsel: And you know that's you constitutional right.  That if you want to testify in your defense you have the absolute right to testify in your defense, do you understand that?
>
> The Petitioner: Yes.
>
> Defense Counsel: And based on our discussions and — and frankly my advice you have opted to waive your right to testify.  And it's your choice knowingly and voluntarily to not testify in this case, correct?
>
> The Petitioner: Yes.

Trial Tr., Vol. II(A), Apr. 26, 2007, at 54-55.

When a tactical decision is made by an attorney that a defendant should not testify, the

defendant's assent is presumed.  *Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000).  Federal courts

on habeas review of a state court conviction indulge "a strong presumption that trial counsel adhered

to the requirements of professional conduct and left the final decision about whether to testify with

the client." *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (citation omitted).  To overcome

this presumption, a habeas petitioner must "present record evidence that he somehow alerted the trial

court to his desire to testify." *Ibid.*  The record in this case actually supports the presumption and

contradicts the petitioner's contention. The petitioner was advised of his right to testify, received his attorney's advice that he not do so, and acknowledged his concurrence in that advice. He cannot now maintain that his lawyer was ineffective for not calling him as a witness. *Gonzales*, 233 F.3d at 357.

The state appellate court likewise reasonably rejected the petitioner's claim that defense counsel was ineffective for failing to call any defense witnesses. The petitioner has listed the names of several witnesses that were not called in his defense, but he did not present the Michigan courts with any details or make any proffer as to what their testimony would have been. In the absence of such allegations, the state court reasonably found that the petitioner had not demonstrated prejudice. *See, e.g, Stewart v Wolfenbarger*, 468 F.3d 338, 353 (6th Cir. 2006); *Dell v. Straub*, 194 F. Supp. 2d 629, 650 (E.D. Mich. 2002) (holding that trial counsel's failure to present the petitioner's son as a defense witness does not amount to the ineffective assistance of counsel because the petitioner failed specify the substance of his testimony). The petitioner has not offered any such information to this Court, either, except for his own assertions. He has offered no affidavits or other evidence of what the witnesses' testimony would have been. In the absence of such proof, the petitioner has not established that he was prejudiced by his attorney's failure to call these witnesses to testify at trial. His ineffective assistance of counsel claim lacks merit. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).

## C.

The petitioner next asserts that his right to counsel under the Sixth Amendment was violated because he was questioned by the jailhouse informant on September 1, 2006 in the absence of an

attorney or a waiver of the right to counsel. The Michigan Court of Appeals rejected this claim on

the merits in the petitioner's direct appeal:

> On September 1, 2006, the informant entered a conditional guilty plea to a pending charge, but there is no indication that defendant's situation was discussed at that time, or that it played any part in the informant's plea agreement. Indeed, the informant did not first approach the police about defendant until September 4, 2006. Formal proceedings for the solicitation charge were not initiated against defendant until after the informant participated in the recorded conversations with defendant. Thus, at the time of the conversations, defendant's Sixth Amendment right to counsel had not yet attached. *People v. Anderson (After Remand)*, 446 Mich. 392, 402, 521 N.W.2d 538 (1994). Accordingly, there was no violation of defendant's Sixth Amendment right to counsel.

*Corrion*, No. 278169, 2008 WL 4332096, *8 (Mich. Ct. App. Sept. 23, 2008).

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy

the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Sixth

Amendment right to counsel does not attach until a prosecution is commenced, signaled by the

initiation of adversary criminal proceedings in a formal charge, a preliminary hearing, an indictment,

an information, or an arraignment. *See McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). "It is only

at that time 'that the government has committed itself to prosecute, and only then that the adverse

positions of government and defendant have solidified. It is then that a defendant finds himself

faced with the prosecutorial forces of organized society, and immersed in the intricacies of

substantive and procedural criminal law.'" *United States v. Gouveia*, 467 U.S. 180, 189 (1984)

(*quoting Kirby v. Illinois*, 406 U.S. 682, 689 (1972)). The right is offense specific: a defendant

might have the right to counsel with respect to pending charges in one case, but the right may not

have attached yet to an ongoing investigation of other potential charges. *McNeil*, 501 U.S. at 175.

The state court of appeals was correct in rejecting this claim on the basis that the right to

counsel had not attached on the incipient charge of solicitation of murder. There had been no

initiation of adversary criminal proceedings on the solicitation charge at the time the police had Johnson elicit the incriminating statements from the petitioner.  Therefore, the petitioner's right to counsel under the Sixth Amendment had not yet attached, and the use of the informant in the investigation of that crime, instructing him to record conversations in the absence of an attorney, was not an unconstitutional practice.

D.

The petitioner next asserts that trial court erred in allowing admission of the September 8, 2006 recording because the recording was incomplete, and the questioning by Johnson violated his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).  The Michigan Court of Appeals rejected the claim that the evidentiary foundation for the tape recording was defective on the grounds that a proper foundation was laid, and the attorneys stipulated to the admission of the tape and the accompanying transcript.  The court did not address the *Miranda* argument.

As noted above, the admissibility of the recording as an item of evidence at trial is a matter of state evidentiary law and is therefore not cognizable in this action.  Moreover, the petitioner specifically agreed to admission of a transcript of the recording despite the perceived problems with the quality of the recording.  The colloquy at trial was as follows:

> Defense Counsel: I believe based on my - my review of the tape that it is accurate, although based on case law perhaps that's not the only test.  With that said, John, you and I have talked about this issue, correct?
>
> The Petitioner: Yes.
>
> Defense Counsel: You know that there could be a valid objection to this transcript coming in based on our discussions?
>
> The Petitioner: Yes.

Defense Counsel: Okay. And this morning we've talked about the possibility of agreeing to it coming in, correct?

The Petitioner: Yes.

Defense Counsel: Are you okay with agreeing to it coming in - into evidence I mean - the transcript?

The Petitioner: I need to clarify. We need to understand that this transcript is sort of imperfect. It has clear errors in it.

Defense Counsel: Well you're using that based on your recollection of the conversation and I'm going off of the recording. I'm - so I can't stipulate to its admission without your consent, John. And I've talked to about how there might be advantages to - to us quite frankly to having it admitted. There are disadvantages to us having it admitted. How do you wish to proceed?

The Petitioner: I think I'll have it admitted.

Trial Tr., Vol. II(A), Apr. 26, 2007, at 5-6.

Under Michigan law, "error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence." *People v. Gonzalez*, 256 Mich. App. 212, 224, 663 N.W.2d 499, 508 (2003) (internal quotations omitted). The Michigan Court of Appeals relied on the petitioner's agreement to admit the transcript into evidence as waiving appellate review. The petitioner cannot challenge the foundation for that evidence now.

The second part of the petitioner's claim is that the informant, as an agent of the police, was required to administer *Miranda* warnings. Federal law does not support that argument.

In *Miranda*, the Supreme Court held that the Fifth Amendment privilege against self-incrimination prohibits admission in evidence of statements given by a suspect during a "custodial interrogation" unless the familiar warnings are given. 384 U.S. at 444. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody . . . ." *Ibid.* In *Illinois v. Perkins*, 496 U.S. 292, 296-97 (1990), the Supreme Court

-21-

rejected a claim identical to the one raised here.  In that case, the state sought to elicit statements from an inmate regarding a murder by placing an undercover agent in his cell.  The inmate proceeded to confide in the undercover agent, relating specific details of the murder.  The undercover agent did not give the inmate *Miranda* warnings prior to the conversations.  The Supreme Court noted that the rationale underlying *Miranda* and its progeny suggests that the warnings are only necessary during "incommunicado interrogation of individuals in a police-dominated atmosphere."  *Id.* at 296 (quoting *Miranda,* 384 U.S. at 445).  The Court recognized that it was "the premise of *Miranda* that the danger of coercion results from the interaction of custody and official interrogation."  *Id.* at 297.  When the government appears to control the suspect's fate, the Court has assumed that there are pressures that may weaken the suspect's will.  But when the suspect "does not know that he is conversing with a government agent, these pressures do not exist."  *Ibid.*  Therefore, the concerns underlying *Miranda* are absent when an undercover jailhouse informant elicits statements from a suspect.

In this case, the petitioner obviously was unaware that Johnson was acting as a state agent when he recorded the conversations.  Deception that takes advantage of a suspect's misplaced trust in a fellow inmate does not implicate the right against self-incrimination or trigger the need for the warnings required by the Fifth Amendment.  *Id.* at 297-300.  In those circumstances, a suspect speaks "at his own peril."  *Id.* at 298.  And so did the petitioner in this case.  His rights under *Miranda v. Arizona* were not violated.

E.

The petitioner asserts in his fifth claim that the trial court erred in allowing the prosecutor to introduce the testimony of Karen Corrion describing the petitioner's prior assault on her and his

-22-

prior acts of vandalism. The Michigan Court of Appeals rejected the claim on the merits, finding that the evidence was properly admitted under Michigan Rules of Evidence 404(b) as proof of the petitioner's motive to want her killed.

The petitioner has not presented and this Court has not found any Supreme Court precedent holding that a state court violates due process when it properly admits evidence of a criminal defendant's other bad acts. Michigan appellate courts review the trial court's admission of prior acts evidence under Michigan Rule of Evidence 404(b) for an abuse of discretion. *See People v. Lukity*, 460 Mich. 484, 488, 596 N.W.2d 607, 609 (1999). As the Supreme Court explained, "[t]his type of general standard triggers another consideration under AEDPA. When assessing whether a state court's application of federal law is unreasonable, 'the range of reasonable judgment can depend in part on the nature of the relevant rule' that the state court must apply." *Renico v. Lett*, 130 S.Ct. at 1864 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Consequently, state courts have greater leeway to make mistakes that are insulated from habeas review, as in *Lett*. The *Lett* Court declared that "the more general the rule . . . the more leeway [state] courts have in reaching outcomes in case-by-case determinations." *Ibid.* (concluding that "the Michigan Supreme Court's decision upholding the trial judge's exercise of discretion — while not necessarily correct — was not objectively unreasonable") (internal quotation marks and alterations omitted).

Moreover, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also* Fed. R. Evid. 413 and 414 (allowing such evidence in federal criminal trials). As there is no "clearly established federal law" to which

the state court's decision could be "contrary" within the meaning of section 2254(d)(1), the petitioner's fifth claim does not entitle him to habeas relief.

F.

The petitioner's sixth claim asserts that his trial counsel was ineffective for failing to request an evidentiary hearing in support of an entrapment defense. The Michigan Court of Appeals found that there was no basis for an entrapment defense, and therefore the petitioner was not prejudiced by his counsel's decision not raise it. That court reasoned:

> In this case, even if the jailhouse informant could be considered a government agent for purposes of the entrapment defense, there is no basis in the record for concluding that governmental activity impermissibly induced defendant's criminal conduct. The informant denied encouraging defendant to commit the crime or appealing to defendant's sympathy as a friend, and the informant did not offer any inducements or enticements to defendant to commit the crime. Defendant also was not told that the contemplated act was legal, and the government, through the informant, did not exert any pressure on defendant to commit the crime. Further, there was no investigation targeted on defendant until after the informant initiated contact with the police. By that time, however, defendant had already solicited the informant to kill the victim. Although the police thereafter exercised a degree of control over the informant, that control was directed simply at gathering evidence. The government's conduct, however, did not tend to escalate the culpability of the crime. These facts do not support a claim that the police engaged in impermissible or reprehensible conduct that would induce a hypothetical law-abiding citizen to commit a crime under similar circumstances. Rather, the police simply used an informant to gather evidence concerning the already-completed crime of solicitation of murder. At most, the police simply provided defendant another opportunity to solicit the informant. Because the record does not support a claim of entrapment, defense counsel was not ineffective for failing to pursue this meritless defense. *People v. Lloyd*, 459 Mich. 433, 447-451; 590 N.W.2d 738 (1999).

*Corrion*, No. 278169, 2008 WL 4332096, *2 (Mich. Ct. App. Sept. 23, 2008).

Michigan recognizes a defense of entrapment, but the defense does not negate an element of the charged crime. Rather, it requires an assessment of police conduct collateral to the crime itself to determine if justice requires that the prosecution be barred. *People v. Juillet*, 439 Mich. 34,

-24-

52, 475 N.W.2d 786, 792 (1991).  Michigan's version of the defense is adjudicated by the trial court via pretrial motion; it is not presented to a jury.  *See People v. D'Angelo*, 401 Mich. 167, 173-74, 257 N.W.2d 655, 658 (1977).  The defendant has the burden of convincing a court that "(1) the police engaged in impermissible conduct that would induce a law-abiding person to commit a crime in similar circumstances, or (2) the police engaged in conduct so reprehensible that it cannot be tolerated."  *People v. Ealy*, 222 Mich. App. 508, 510, 564 N.W.2d 168, 170 (1997) (citing *People v. Fabiano*, 192 Mich. App. 523, 525-26, 482 N.W.2d 467, 468-69 (1992)).  Where law enforcement officials present nothing more than an opportunity to commit the crime, entrapment does not exist under state law.  *People v. Butler*, 444 Mich. 965, 966, 512 N.W.2d 583, 583 (1994).

The petitioner had a right to present valid defenses at trial, as long as they are supported by the record.  *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (stating that "whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'") (internal citations omitted).  The state court of appeals reviewed the same facts available to the trial court and concluded that the record did not support the defense of entrapment.  There is no reason to believe that the trial court would not have reached the same conclusion, and since the question is one for the court (not the jury), the court of appeals would have had the last word on the matter.

The state court of appeals applied the *Strickland* rule that a defendant claiming ineffective assistance of counsel must show defective performance and prejudice, as discussed in detail above.  That court's conclusion that the entrapment defense was a non-starter was critical to the conclusion that counsel was not ineffective by failing to press that issue.  A lawyer does not perform deficiently

if he or she fails to advance a meritless argument. *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("The Sixth Amendment does not require counsel to forecast changes or advances in the law, or to press meritless arguments before a court."); *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989) ("[F]ailure to raise a meritless legal argument does not constitute ineffective assistance of counsel."); *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982) (stating that attorney's failure to raise meritless legal argument does not constitute ineffective assistance); *see also Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

The state appellate court's view of the merits of the entrapment defense was sound as well. As the court noted, Johnson did not become involved with the police until after the petitioner had already solicited him to murder his ex-wife. The involvement of the police after that point did not induce him to commit a crime that he would otherwise not have committed because he already had committed it. No matter what evidence his counsel would have elicited from police witnesses at an evidentiary hearing, it would not have altered the fact that Johnson testified that the crime was already committed before he informed the police.

Johnson admitted that he spoke to the detective before he testified at trial. He admitted that his own sentencing hearing had been adjourned and that the same prosecutor was handling the case. Johnson denied that he was trying to set up the petitioner, and he admitted that he lied to the petitioner about his brother-in-law killing someone. But Johnson maintained that it was the petitioner who raised the idea of killing instead of just hurting his ex-wife. The petitioner's defense hinged on an argument that could only be made to the jury: that Johnson's testimony was not credible. Trial counsel did not perform deficiently by failing to request a pretrial entrapment hearing

before the court, nor is there a reasonable probability that the result of his trial would have been more favorable had his counsel requested a hearing.  The petitioner's sixth claim lacks merit.

### G.

The petitioner's seventh claim is that he in fact was entrapped into committing the crime when Johnson asked him to produced maps of Karen Corrion's property.  Apparently, he argues that the conduct of the police and prosecution in using Johnson to elicit incriminating statements from the petitioner was so egregious that it violated due process.

The claim must fail because it cannot be supported by Supreme Court law.  The United States Supreme Court has not yet recognized a constitutional right to assert entrapment as a defense. *Sosa v. Jones*, 389 F.3d 644, 645 (6th Cir. 2004); *see United States v. Russell*, 411 U.S. 423, 430-32 (1973) (declining to adopt the defendant's proposed due-process defense to entrapment). Consequently, the state court's rejection of the petitioner's entrapment claim is a matter of state law and is not contrary to or an unreasonable application of clearly established federal law.  Therefore, habeas relief is not warranted on this claim.  *See* 28 U.S.C. § 2254(d).

### H.

In his eighth claim, the petitioner asserts that the trial court erroneously instructed the jury on the prosecutor's burden of proof when it told the jury that it may consider circumstantial evidence.  The petitioner objects to the commonplace instruction illustrating the nature of circumstantial evidence, which states:  "[I]f you see a person come in from outside wearing a raincoat covered with small drops of water that would be circumstantial evidence that it is raining. You may consider circumstantial evidence.  Circumstantial evidence by itself, or a combination of

circumstantial evidence and direct evidence, can be used to prove the elements of a crime.  In other words, you should consider all the evidence that you believe."  Trial Tr., Vol. II(A), Apr. 26, 2007, at 85.  The Michigan Court of Appeals likewise rejected this claim on the merits during the petitioner's direct appeal because the trial court also defined the concepts of reasonable doubt and the burden of proof in constitutionally acceptable terms.  *Corrion*, No. 278169, 2008 WL 4332096, *6 (Mich. Ct. App. Sept. 23, 2008).

An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'"  *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record."  *Ibid*. (quoting *Cupp*, 414 U.S. at 147).  The Court must "inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution."  *Ibid*. (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).

The petitioner asserts that the trial court's example of circumstantial evidence, together with the instruction that "you should consider all the evidence that you believe," reduced the prosecutor's burden of proof below the requirement of beyond a reasonable doubt.  However, the jury had already been instructed on the burden of proof as follows:

> Now a reasonable doubt, as I indicated to you earlier, is a fair honest doubt growing out of the evidence or the lack of evidence.  It is not merely an imaginary doubt or a possible doubt, but a doubt based on reasonable and common sense.  A reasonable doubt is just that.  A doubt that is reasonable after a careful and considerate examination of the facts and circumstances of this case.

Trial Tr., Vol. II(A), Apr. 26, 2007, at 80.

-28-

It is, of course, beyond debate that the State must prove each element of a charged offense beyond a reasonable doubt in order to sustain a conviction. *See In re Winship*, 397 U.S. 358 (1970). This burden of proof has been referred to as "an ancient and honored aspect of our criminal justice system," *Victor v. Nebraska*, 511 U.S. 1, 5 (1994), and, notably, it "plays a vital role in the American scheme of criminal procedure. Among other things, it is a prime instrument for reducing the risk of convictions resting on factual error." *Cage v. Louisiana*, 498 U.S. 39, 40-41 (1990) (per curiam) (internal quotations and citation omitted), *overruled on another ground by Estelle v. McGuire*, 502 U.S. 72 n.4. The Supreme Court has never prescribed specific language that is required to convey the notion of reasonable doubt, and some courts even have found that the term "reasonable doubt" is self-defining and urge trial courts to give no explanatory instruction. *See, e.g., United States v. Walton*, 207 F.3d 694, 696 (4th Cir. 2000) ("There is no constitutional requirement to define reasonable doubt to a jury."); *United States v. Thomas*, 774 F.2d 807, 811-12 (7th Cir. 1985) ("We have repeatedly admonished district courts not to define 'reasonable doubt' . . . because often the definition engenders more confusion than does the term itself.") (quoting *United States v. Martin-Trigona*, 684 F.2d 485, 493 (7th Cir. 1982)).

Michigan's pattern jury instruction given by the trial court in this case adopts a minimalist approach and does little to convey any meaning of the concept. However, since no definition is required by the Constitution, the instruction by itself does not lessen the State's burden, and the Sixth Circuit has found that it does not violate the Due Process Clause. *See Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999). Moreover, there is no Supreme Court holding that a jury cannot convict solely on the basis of circumstantial evidence. The instruction explaining circumstantial

evidence, when read together with the instruction on burden of proof and reasonable doubt, did not diminish the prosecutor's burden of proof. The petitioner's eighth claim is without merit.

I.

The petitioner's ninth claim is that the trial court enhanced his sentence because he exercised his right to stand trial rather than plead guilty. His tenth claim is that his sentence was erroneously enhanced because the court considered a prior conviction in which the petitioner was not afforded an attorney during his direct appeal in violation of *Halbert v. Michigan*, 545 U.S. 605 (2005). And his eleventh claim is that the trial court was biased against him. These three claims were not raised in the Michigan Court of Appeals during the petitioner's direct appeal. Instead, the petitioner first raised them in his application for leave to appeal filed in the Michigan Supreme Court following his direct appeal. The claims were then omitted from the petitioner's motion for relief from judgment and the appeal that followed from it.

As discussed earlier, the petitioner's selective presentation of these claims amounts to a failure to exhaust his state court remedies. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that exhaustion does not occur until a prisoner "invok[es] one complete round of the State's established appellate review process," including a petition for discretionary review to a state supreme court). As noted earlier, the evaporation of the petitioner's state court avenues for relief causes the exhaustion breach to evolve into a procedural default. *See Pudelski v. Wilson*, 576 F.3d 595, 605 (2009); accord *Gray v. Netherland*, 518 U.S. 152, 161 (1996) (explaining that the exhaustion requirement is satisfied if the habeas petitioner's claims are procedurally barred under state law because he no longer has an available remedy to exhaust); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) ("If no remedy exists, and the substance of a claim has not been presented to the state

-30-

courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts.").

Therefore, in order to obtain review of his claims, the petitioner must establish cause and prejudice to excuse his default. The petitioner asserts ineffective assistance of appellate counsel as cause to excuse his defaulted claims. However, ineffective assistance of appellate counsel on direct review would not excuse the petitioner's failure to properly exhaust these claims on collateral review in state court. *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995). The petitioner cannot demonstrate cause to excuse his default, and these claims are barred from review.

## L.

The petitioner's twelfth claim is that the Michigan Court of Appeals was required to reverse his conviction because the prosecutor did not file its appellate brief timely during the petitioner's direct appeal, thereby waiving its response to his claims. The petitioner's thirteenth claim is that trial court erred by failing to hold an evidentiary hearing that he requested on October 13, 2008. The petitioner wanted to establish at the hearing that the contents of the first tape recording were exculpatory and would have shown that he was the victim of entrapment. And the petitioner's final claim is that his rights under the Montana Constitution were violated when the police obtained the tape recording of his conversations with Johnson. The petitioner contends, "this State cannot penalize the defendant for living in Michigan where he would have received lawful protection against warrantless recordings of his private conversations as Montana extends further Fourth Amendment rights to prisoners attacked by police and their agents." Am. Petition at 38.

As far as the Court can ascertain, these three claims were never presented to any state court in either of the petitioner's state appellate proceedings. Therefore, they are barred from review for

the same reasons as the petitioner's ninth, tenth, and eleventh claims are barred: they are unexhausted and the petitioner no longer has a state court remedy available to meet the exhaustion requirement. As with the previous three claims, the petitioner cannot excuse his default because he cannot point to any factor external to the defense that prevented him from raising the claims in his motion for relief from judgment. Therefore, these last three claims cannot provide a basis for relief.

III.

The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**


s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 7, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 7, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL